# CHARLESTON.

RAINES *v.* CHESAPEAKE & OHIO RAILWAY CO.

Submitted March 22, 1910.   Decided February 21, 1911.

CARRIERS—*Carriage of Passengers—Injury to Passenger.*

> Where one intending to become a passenger, and while the work of preparing the train on which he intends to take passage is going on, necessitating dangerous switchings and couplings of the cars, of which he has notice, and at a point where the carrier is not accustomed to receive passengers, and without notice to or invitation by any officer or agent of the carrier with authority, enters one of the coaches, and in attempting to go from one coach to another, is injured by a jolt or impact given to the coaches in making such switches or couplings, the carrier is not liable to him in damages for his injures thus sustained.

(BRANNON, JUDGE, absent.)

Error to Circuit Court, Raleigh County.

Action by Henry Raines against the Chesapeake & Ohio Railway Company. There was a directed verdict for defendant, and plaintiff brings error.                                    *Affirmed.*

*A. A. Lilly* and *M. F. Matheny,* for plaintiff in error.

*Simms, Enslow, Fitzpatrick & Baker,* for defendant in error.

MILLER, JUDGE:

In an action for personal injuries the court below, on its motion directed the jury to find for the defendant, and the jury found accordingly; and to review the judgment of *nil capiat* thereon, plaintiff brings error to this Court.

The correctness of the judgment below depends upon the question whether the evidence, adduced before the jury proved, or in an appreciable degree tended to prove, such a case, made by the pleadings, as entitled plaintiff to have the evidence submitted to the jury on any issuable fact, or whether the facts proven presented but a question of law for the court, as the court below necessarily determined in directing the verdict.

It is alleged and proven that plaintiff sustained the injuries of which he complains at Lester, in Raleigh county, the terminus, so far as passenger traffic is concerned, of a branch line operated by defendant company and connecting with its main line at Prince station. It is also alleged that at the time plaintiff sustained his injury he had become a passenger on the defendant's railway train, and as such, entitled to all the care and protection which the law imposes upon a carrier of passengers. The court below, however, on certain facts proven, and as to which there is no conflicting evidence, held that at the time plaintiff received his injury, the relationship of carrier and passenger had not begun; that the plaintiff was then a mere intruder, having gone upon the train, without the knowledge or invitation of the defendant or of its employees in charge of the train, and before the train had been prepared to receive passengers, which was well known to plaintiff, and at a place where the defendant was not accustomed to receive passengers. In this conclusion we think the court below was clearly right, and that the verdict was properly directed.

The facts are that after the defendant's train had reached

Lester, about 10:50 A. M. of the day of the alleged injuries, and as the custom was, after discharging the passengers, the engine had been cut loose and sent around on a loop switch to be brought back in front of and coupled back to the coaches for the return trip. In making its round on the loop a freight car was encountered which had to be shoved in front of the engine clear around on the main track, and then brought back in front of the engine and set back on the switch out of the way of the train. To do this the custom was, as was well known to plaintiff, to make what is called a running switch, that is the car was pushed down the main track, and as the engine came back to be hooked up to the train, the car was cut loose before reaching the switch, the switch thrown quickly, and the freight car in this way kicked off or thrown off on the side track. On this occasion plaintiff, who lived but a short distance away, on the arrival of the train that morning went immediately down to the railroad, which was in full view, and without ticket or payment of fare, and, so far as the record shows, without the knowledge or consent of the officers of the train, and before the train had been prepared to receive passengers, and before it had been pulled up to the place where passengers were usually received, and before any announcement by the conductor, as his custom was, calling for the passengers to get aboard, entered and took a seat in one of the coaches, followed soon afterwards by two other men. At the suggestion of one of these men, plaintiff left his seat in the car, which he had entered, followed by the other two men, and started to go into the rear coach. Just as plaintiff stepped upon the platform of the car which he had first entered in his journey to the rear car, the engine came back, followed closely by the freight car, which the switchman had failed to turn into the switch and bumped into the passenger coaches in making the coupling, knocking the plaintiff down on the platform, the man immediately behind him falling upon him, the third falling on the second man, and in which fall plaintiff alleges he sustained the injuries complained of. Whether or not the engine as it was driven back in the usual way, or by the added force of the freight car coming in contact with it, gave the passenger coaches any unusual jolt, the evidence is conflicting; but we do not think this point of conflict ·

material; nor do we think it material that it may have been negligence to make running switches as the defendant was accustomed to do, and did do on this occasion, for if plaintiff had not been received as a passenger, the law is that he assumed all the risks of danger incident to the way in which switches and couplings were usually made, before the train was prepared to receive passengers at that point. Besides, if he had remained in his seat in the car which he first entered he would have sustained no injuries. With knowledge, however, of all the facts which should have put him upon his guard, and knowing that at any moment the engine was liable to be brought back and coupled to the coaches, and without taking any precautions for his own safety, he undertook to enter the coaches and pass from one to the other without notice to or, so far as the evidence shows, knowledge of the trainmen thereof, and thereby contributed to the injuries sustained.

The proposition can not be questioned that when one has been received as a passenger the utmost care which human skill, diligence and foresight can provide to protect him from danger is required of the carrier, and the slightest negligence on the carrier's part is regarded gross negligence. This proposition was lastly affirmed in *Kennedy* v. *C. & O. Ry. Co.,* 70 S. E. 359, decided at the present term. But as a proposition of law applicable to this case we think that, where one intending to become a passenger, and while the work of preparing the train on which he intends to take passage is going on, necessitating dangerous switchings and couplings of the cars, of which he has notice, and at a point where the carrier is not accustomed to receive passengers, and without notice to or invitation by any officer or agent of the carrier with authority, enters one of the coaches, and in attempting to go from one coach to another, is injured by a jolt or impact given to the coaches in making such switches or couplings, the carrier is not liable to him in damages for his injuries thus sustained. Moore on Carriers, 549; *St. Louis S. W. Ry. Co.* v. *Morrow,* (Tex.) 93 S. W. 162; *Hannibal & St. Jo. Ry. Co.* v. *Martin,* 11 Ill. App. 386; *Dewire* v. *Boston &c R. R. Co.,* 148 Mass. 343; *Choate* v. *S. A. and A. P. Ry. Co.,* 90 Tex. 82; *Radley* v. *Columbia Ry. Co.,* 44 Ore. 332; *Illinois Central R. R. Co.* v. *Green,* 81 Ill. 19; 4 Elliott on Railroads,

sections 1581, 1630. While the cases cited are not exactly parallel we think they fully support this proposition, and that the principles enunciated therein control this case.

Finding no error in the judgment below it will be our duty to affirm it, and it will be so ordered.

*Affirmed.*