# CHARLESTON

TURK v. NORFOLK & WESTERN RAILWAY COMPANY.

Submitted February 2, 1915.   Decided February 16, 1915.

1. PLEADING—*Demurrer—Ground—Declaration.*
    A declaration against a railway company for alleged injuries

sustained by a passenger, by being ejected from one of its cars, is not bad on demurrer because it alleges that the acts of defendant's servants complained of were done negligently, willfully, maliciously, and so forth, supposed inconsistent causes of action, such defect therein, if any, being cured by section 29, chapter 125, serial section 4783, Code 1913. (p. 625).

2.   CARRIER—*Passengers—Continuance of Relation—Right to Protection.*
Where one is received as a passenger, and while on the way to his destination the journey is interrupted by a wreck on the track, and after waiting some hours for the obstruction to be removed without success, the train is run back to the initial station where he was received as a passenger, at a late hour of the night, and the night is dark and cold, the passenger a stranger, the station a small one in a remote place in the mountains, and on inquiry of the conductor the passenger is told that he knows of no place where he can secure shelter and lodging, and that he might remain on the car until the journey should be resumed in the morning, and the conductor provides him a place to rest on the seats in the car, the relation of passenger and carrier is not then severed, but continues, entitling the passenger to reasonable protection at the hands of the railway company, and from any and all unlawful assaults or imprisonment at the hands of its employees. (p. 626).

3.   SAME—*Passengers—Damages—Excessive     Recovery—Assault—Imprisonment.*
The verdict of the jury for $500.00 compensatory damages, and $1,000.00 punitive damages, under the facts and circumstances of this case, are not excessive, and under the evidence were justified by the following instruction given, which we think properly propounded the law of this case: ''The court further instructs the jury that if they shall find the defendant guilty, they are, in estimating the plaintiff's damages, at liberty to consider the bodily and mental pain and anguish resulting from the defendant's acts as proved, and the humiliation put upon the plaintiff; and if they shall further believe from the evidence that the conduct and acts of the defendant's servant toward the plaintiff were wanton, wilful, and in utter disregard of his rights, then the jury are told that they are not bound to adhere, in computing it, to the money loss or damage, but may give such damages as will be exemplary in keeping others from so doing, and the defendant from repeating like conduct.'' (p. 631).

Error to Circuit Court, McDowell County.

Action by Morris Turk against the Norfolk & Western Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Stokes & Sale* and *Theodore W. Reath,* for plaintiff in error.

*Cook, Litz & Harman* and *George W. Howard,* for defendant in error.

Miller, Judge:

Action by plaintiff for injuries sustained while a passenger on defendant's railway, in consequence of an alleged unlawful assault upon him by defendant's servants and his unlawful arrest and removal by them from the railway cars, and imprisonment in a certain lockup or prison.

On the trial the jury returned a verdict for plaintiff for $500.00 compensatory damages, and $1,000.00 punitive damages, and the aggregate verdict of $1,500.00, and on which the court pronounced the judgment complained of on this writ of error.

The first point of error is that the declaration is bad on demurrer. The specifications of error are, first, that it discloses plaintiff a trespasser on the train; second, that the acts complained of are alleged to have been done ''wrongfully, negligently, unlawfully, injuriously, willfully, maliciously, and violently'', inconsistent causes of action, and which may have resulted in an inconsistent verdict.

We deny the proposition involved in the first specification, upon the ground, as we shall hold on the merits, that plaintiff was at the time of his alleged injuries, a passenger, and entitled to all the protection of a passenger, imposed on defendant by law. On this proposition *Loy* v. *Northern Pac. Ry. Co.,* 122 Pac. 372, is cited and relied on. That was the case of a passenger having purchased a ticket over the wrong railroad, and boarding the train on which he intended to take passage, and was ejected by the conductor because he refused to pay, or produce a ticket entitling him to passage. Such is not the case here presented.

On the second specification, defendant's counsel rely on *Rideout* v. *Winnebago Traction Co.,* (Wis.) 101 N. W. 672, and *Cleveland, &c. Ry. Co.* v. *Miller,* 149 Ind. 490. We do not think these cases support their proposition to the extent at least of rendering the declaration bad on demurrer. Apropos to this question the Wisconsin court says: ''The

theory of appellant's counsel seems to have been then, and to be still, that the charge of inadvertent conduct and of willfulness neutralized each other, rendering the complaint insufficient to state any cause of action. We think otherwise. In a case of this kind, while it is true a charge of gross negligence will not warrant a recovery on the ground of ordinary negligence, even though accompanied by an allegation that plaintiff was in the exercise of ordinary care at the time of the occurrence complained of, it does not necessarily follow that a charge including both elements of wrongful conduct is meaningless. If very strict technical rules of pleading were applied it might be otherwise. Under the proper rule every reasonable intendment is to be considered in favor of the pleading and everything essential to the cause of action sought to be stated, reasonably inferable from the language used, is to be deemed as effectually pleaded as if expressly alleged." Citing a statute and cases. Or as sometimes stated in other cases, says this court: "If the essential facts can be gathered from the pleading or may reasonably be inferred from the allegations it is good though such allegations be in form uncertain and incomplete." The Indiana case decides, among other things, pertinent here, that "An action for a willful injury is not supported by a finding that the injury was the result of gross negligence."

But why need we dwell on this subject? Our statute, section 29, chapter 125, serial section 4783, Code 1913, cures any supposed defects in this declaration. See that section and the decisions cited under notes 12 and 13 to that section, and especially *Union Stopper Co.* v. *Wood,* 66 W. Va. 461. The demurrer was properly overruled.

The propositions covered by defendant's second and sixth assignments of error, namely, that the court should have stricken out plaintiff's evidence and directed a verdict, as proposed by defendant's several motions and instructions, rejected, all depend upon the leading and controlling question, namely, was Turk, the plaintiff, a passenger, as he alleges, or as defendant contends a mere licensee or trespasser, at the time of the injuries complained of?

We must, therefore, devote ourselves to this question, was Turk a passenger? The controlling facts are few, and not

materially controverted: On April 24th, 1912, at Berwind, McDowell County, West Virginia, Turk purchased from defendant a ticket from Berwind, by way of Iaeger, to Welch, a total distance of about fifty five miles. To Iaeger was about twenty eight miles. At Iaeger it was necessary to change cars for Welch. The train for which Turk purchased his ticket and on which he took passage, and on which it is conceded he became a passenger, was due to leave and did leave Berwind about 4:30 o'clock P. M. When the train had proceeded about ten miles beyond Berwind a wreck was encountered. After waiting there several hours for the wreck to be cleared the train was run back about two miles to English, a station intermediate between the wreck and Berwind, and where an effort was made by the conductor to learn whether a train would be sent from Iaeger to which the passengers might be transferred and carried on to Iaeger, and learning that such a train would not be provided, the conductor announced to the passengers, that his train would be run back to Berwind, and wait there till morning. And the evidence of plaintiff and others is that the conductor also announced to him and other passengers, on arrival at Berwind, that night about nine o'clock, that any passengers desiring to do so might remain on the cars until they should proceed to Iaeger the next morning. The conductor admits that he told the passengers that so far as he was concerned they might do so. Plaintiff and two or three other passengers, having no other place to go, and the night being dark and cold, and not being able to learn on inquiry of the conductor that there was any place at or in the vicinity of Berwind, a little country station, where they could secure shelter or lodging, remained on the train, and plaintiff swears, the conductor turned the car seats for him so that he might lie down, as he did, and being tired, soon fell asleep. Along about ten or eleven o'clock plaintiff was rudely awakened by one Meade, a car cleaner employed by defendant, and was by him told to get out of the car. Plaintiff explained to Meade that he was a stranger, with no place to go, and that he was there by the conductor's permission to remain over night, until the train should proceed on its journey in the morning. A colloquy ensued between plaintiff and Meade, in which, according to

plaintiff, Meade used rough and profane language in order-
ing him off the car, plaintiff protesting all the while that he
had no place to go and had been given permission by the con-
ductor to stay there till morning. After this colloquy Meade
left the car, but returned a few minutes later with another
employee, Kennedy, the hostler, who took hold of plaintiff in
a rough way, and in very profane and abusive language
ordered plaintiff out of the car, plaintiff all the while pro-
testing his right to remain in the car by authority of the con-
ductor, until morning, and that he had no place to go for
shelter or sleep. After these imbroglios Meade and Kennedy
left the car. While they were gone plaintiff says he went out
to view the situation and to determine whether it was better
to go than remain, and finding the train on a side track, and
the night very dark and cold, and being afraid of his life, and
not knowing where to go, he went back into the car and laid
down again. Shortly afterwards Meade and Kennedy re-
turned bringing with them a big fellow by the name of
Sparks, a deputy sheriff, who caught hold of plaintiff roughly,
cursed him, knocked him down, and together with Meade and
Kennedy, led him out of the car and took him bleeding and
wounded by the blows to a dirty filthy lockup in that locality,
infested with body lice, and thrust him in and locked him up
with another passenger, where he remained bleeding, and cold
and chilled, the entire night and till released in the morning,
and told he had time to catch the train to Iaeger; that no
charges were ever afterwards made or prosecuted against him
as a cause for his arrest and imprisonment. And when plain-
tiff inquired of Sparks, on releasing him, whether he was not
going to give him a trial, he said, no, that he ''puts in a man
whenever he wants to, and lets him out whenever he wants
to.''

This evidence of plaintiff is not materially controverted by
these trainmen or Sparks, the deputy sheriff, except the train-
men deny that they assisted in arresting plaintiff, and in
taking him to the lockup, and they say plaintiff used profane
language toward them and Sparks. That plaintiff was sub-
jected to very unusual and rough treatment, and even gross
and wanton abuse by these men, can not be doubted.

Do these facts make plaintiff a passenger at the time he was

so ejected from the train and thrown into prison? The law of carriers is that where one presents himself for passage, buys a ticket, and is received as such, either at the station, a reasonable time before the time for departure, or on board the cars provided, he is a passenger, and continues to be such until the contract of carriage has been fully performed by the carrier, and during that time is entitled to all the protection which the law imposes upon carriers. *Layne* v. *C. & O. Ry. Co.*, 66 W. Va. 607; *Kidwell* v. *C. & O. Ry. Co.*, 71 W. Va. 664; *Killmyer* v. *Wheeling Traction Co.*, 72 W. Va. 148; *Illinois Cent. R. Co.* v. *O'Keefe*, 61 Am. St. Rep. 68, and valuable note pp. 75, et seq.

That plaintiff had become a passenger and had paid his fare, on the car from which he was so ejected, is conceded. And that defendant company had not performed its contract, for which plaintiff had paid the consideration demanded, and who still held a ticket cancelled to Iaeger, is also a conceded fact. But it is claimed that on returning to Berwind, and notwithstanding the circumstances and conditions existing there, the temporary suspension of the journey to Iaeger that night, the train was thereby annulled until morning, and that the relationship of carrier and passenger was thereby also suspended, and this notwithstanding the permission of the conductor that plaintiff might remain in the car until morning; that plaintiff was thereafter no longer entitled to protection as a passenger, but, if at all, only as a trespasser or licensee, until the journey to Iaeger was resumed in the morning.

It is well settled law that the temporary suspension of a contract of carriage, until arrangements can be made by the carrier to overcome difficulties due to washouts or other obstructions on the track, does not sever the relationship of carrier and passenger already begun. And that during such time the passenger is entitled to all the rights pertaining to a passenger on a train moving towards the point of destination, and stipulated in the contract. 4 R. C. L., section 496; *Dwinelle* v. *N. Y. Cent. & H. R. R. Co.*, 120 N. Y. 117; *Killmyer* v. *Wheeling Traction Co.*, *supra*. And these cases hold that under such circumstances the obligation still rests on the carrier to protect its passengers against any injury from the

negligence or willful misconduct of its servants, and of the fellow passengers and strangers, so far as practicable, and to provide them with the usual accommodations, and any information and facilities necessary for the full performance of the contract on the part of the carrier.

It is not pretended in this case that the relationship of carrier and passenger, as between plaintiff and defendant, ceased until the train was run back to Berwind, and there was reasonable time given to alight. The proposition is that regardless of the circumstances of the night and conditions existing at Berwind, defendant had the right to suspend this relationship, eject the passengers, and leave them to shift for themselves, without shelter and protection, and thereby relieve itself of all duties and liabilities of carrier to passenger. We do not think this can be the law of this case. What defendant's rights might be under other and different circumstances, we are not called upon to say, but as applied to the facts in this case the law ought to be, and we think is, otherwise. When one goes to a railroad station at a proper time and with intention in good faith to become a passenger, he ordinarily occupies the status of a passenger, even though he has not purchased a ticket. *Illinois Cent. R. Co.* v. *O'Keefe, supra,* note 76 and cases cited. And high authority is found for the proposition that if a person waiting at a station for passage on a train soon to depart, and who is invited by the ticket agent to sit in an empty car standing on a side track, while the station room is being cleaned, is entitled to the same protection from the company while in the car as while waiting in the regular waiting room. *Shannon* v. *Boston etc. R. R. Co.,* 78 Me. 52, 4 R. C. L. section 491, p. 1035. Upon reason and the general principles of these authorities applied to the facts in this case we think plaintiff continued in the status of passenger at the time he was ejected from the car and maltreated and imprisoned by defendant's servants and Sparks.

Having reached this conclusion the question remains, is defendant liable in damages for the injuries inflicted on plaintiff by its servants and Sparks? While the relationship of passenger and carrier continues, the carrier is held to a very high degree of care in protecting its passengers not only

from the wrongs and injuries of its servants, but of strangers also. *Gillingham* v. *Ohio River Railroad Co.*, 35 W. Va. 588; 6 Cyc. 598; 2 Hutchinson on Carriers, (3rd ed.) section 980; *Brunswick & Western R. R. Co.* v. *Ponder*, (Ga.) 97 Am. St. Rep. 152; the West Virginia cases above cited; *Dwinelle* v. *N. Y. Cent. & H. R. R. Co. supra*, 17 Am. St. Rep. 611, 612. In the latter case it was held that: "A sleeping-car porter, who makes an assault on a passenger while the latter is seek-. ing of him information necessary to enable the passenger to pursue his journey in another train which the carrier had provided for his transportation, may be regarded as in the service of the company, and the passenger may therefore recover from it compensation for injuries suffered from such assault." We think it makes no difference whether the trainmen or Sparks assaulted and arrested and imprisoned. plaintiff. Sparks was there at the instance and solicitation of defendant's servants, and they must be regarded as having procured Sparks to commit the assault on plaintiff, and imprison him. All were fully advised by plaintiff of his relationship to defendant company, and of the permission given him by the conductor to remain in the car; and they had no lawful excuse for the assault and brutality towards plaintiff. With this knowledge, and though in the discharge of their duties as car cleaner and hostler, they had no right to disregard plaintiff's rights and call to their assistance a public officer, to commit wrongs and injuries on plaintiff. According to plaintiff's evidence Sparks assaulted and maltreated him before plaintiff had uttered a word. And there is no foundation for the contention that plaintiff invited the injuries or was responsible for his arrest by this officer. Our cases of *Raines* v. *C. & O. Ry. Co.*, 68 W. Va. 694, and *Layne* v. *C. & O. Ry. Co.*, *supra*, and subsequent cases cited, we think, fully sustain this proposition.

The only other point of error which we will note is that the verdict of the jury awarding compensatory and punitive damages is excessive, and that plaintiff's instruction number 3, given, and on which the verdict was evidently predicated, is erroneous. That instruction is as follows: "The court further instructs the jury that if they shall find the defendant guilty, they are, in estimating the plaintiff's damages, at

liberty to consider the bodily and mental pain and anguish resulting from the defendant's acts as proved, and the humiliation put upon the plaintiff; and if they shall further believe from the evidence that the conduct and acts of the defendant's servant toward the plaintiff were wanton, wilful, and in utter disregard of his rights, then the jury are told that they are not bound to adhere, in computing it, to the money loss or damage, but may give such damages as will be exemplary in keeping others from so doing, and the defendant from repeating like conduct.'' We think the instruction properly states the law of this case, and is not opposed to *Claiborne* v. *C. & O. Ry. Co.,* 46 W. Va. 363, as interpreted by our subsequent decisions. If plaintiff's treatment was as his evidence tends to show, and the jury had the right to believe, and evidently did believe him, he was grossly maltreated and abused. We cannot say the damages awarded were excessive, nor do we think the punitive damages, under the facts and circumstances of this case, are disproportionate to the compensatory damages awarded.

In view of the conclusion reached, we find no error in the giving or refusing of the other instructions, and are therefore of opinion to affirm the judgment.

*Affirmed.*