# CHARLESTON.

## MICHAELSON v. TURK.

Submitted October 10, 1916.　Decided October 17, 1916.

1. LIBEL AND SLANDER—*Actions—Admissibility of Evidence.*

   In an action under the statute making insulting words actionable, the jury are entitled to know and consider all the facts and circumstances leading up to, and attending their alleged use, and furnishing any explanation, palliation or provocation therefor. (p. 32).

2. SAME.

   It is error to exclude from the jury the testimony of a witness concerning the use, between plaintiff and defendant, on previous occasion, of the alleged insulting words, and how they were regarded by the parties. (p. 32).

3. SAME—*Actions—Presumptions.*

   The jury may presume malice from the use of words made actionable by the statute, but this presumption may be rebutted by proof that no malice was intended. (p. 34).

4. SAME—*Actions—Correction of Verdict.*

   It is error in such action to take from the jury the discretion which the law reposes in them, by giving an imperative instruction to find for the plaintiff, if they believe a certain state of facts has been proven. (p. 36).

   (MASON, JUDGE, dissenting).

Error to Circuit Court, Mercer County.

Action by T. Michaelson, an infant, etc., against Samuel Turk. Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside. Remanded for new trial.*

*John M. McGrath, and Conley & Johnson,* for plaintiff in error.

*Sanders & Crockett* and *Russell S. Ritz,* for defendant in error.

WILLIAMS, PRESIDENT:

By this writ of error defendant, Samuel Turk, seeks reversal of a judgment recovered against him by T. Michaelson in an action for slander.

The declaration charges defendant with having called plaintiff, in a public place in one of the streets of Bluefield, in the

presence of other persons, a "dirty, ornery, low-down, son-of-a-bitch and bastard." The action is brought under the statute, Sec. 2, Ch. 103, Code, for the use of insulting words. The plea is not guilty. It was proven by the testimony of plaintiff and one or two other witnesses that at the place and on the occasion alleged defendant was angry toward plaintiff and did call him by the vile epithet, almost in the exact words alleged. Defendant admitted that he spoke the words, but testified that he was not angry at the time, did not then mean to insult or injure plaintiff; that they were members of a club and frequently gambled at the club room and were in the habit of using those terms toward each other during their games and that they were used commonly between them and among other members of the club and were always spoken in a friendly spirit and without any purpose to offend the party of whom they were spoken, and that they were never considered by them as insults and that when he spoke them on the occasion charged in the declaration, he did so in the same spirit of friendliness and good humor and without any intention to insult plaintiff or wound his feelings.

Defendant offered to prove by Harry Matz, another member of the club, that when plaintiff and defendant were engaged in games of cards, they often applied the alleged epithet to each other in a friendly way and that neither of them ever took offense at it. The court excluded Matz's testimony and directed the jury not to consider it, and this is assigned as error. The jury were entitled to know whether or not the epithet had been commonly applied by the parties to each other and how they regarded it, whether as an insult or not, in order that they might correctly determine the purpose and effect of its use on the occasion in question. They were entitled to know all the facts and circumstances leading up to the use of the words. Notwithstanding the words were spoken and the jury may have thought they were such as tended to violence and a breach of the peace, the evidence was important on the question of malice, which is the very gist of the action. If the jury believed the words were meant simply as a jest, and were not spoken with malicious intent, they could find for the defendant, notwithstanding the words were

such as in their opinion are commonly construed as insults and tend to violence and a breach of the peace. But it is argued in brief that plaintiff was not prejudiced by the exclusion of that evidence, for the reason that defendant's own testimony on that point went to the jury and was not contradicted by any rebuttal testimony. It does not follow that the admission of his own testimony, uncontradicted though it be on that point, shows no prejudice by the rejection of Matz's testimony on the same point. For although not contradicted on that point, defendant was contradicted by plaintiff and other witnesses on other material points, and as to them, the jury evidently did not believe him, and, having found his testimony false in respect of some material matters, they had the right to conclude that he was testifying falsely in regard to all material matters, and to, disregard his testimony. They were the sole judges of his credibility and of the value of his testimony. They may have disregarded his testimony concerning the fact he proposed to prove by Matz, and, the fact being material, it must be presumed that the exclusion of Matz's testimony was prejudicial. The court can not see clearly that it did not prejudice him.

Defendant testified that plaintiff won money from him by the use of marked cards, and the court struck out this testimony; and this is assigned as error. But this error was subsequently cured by allowing his testimony concerning this fact, brought out on cross-examination, to go to the jury, no objection then being made to it. The jury were entitled to this evidence in considering whether or not there was any provocation for speaking the words. If defendant was provoked by plaintiff to make use of the language, the jury could regard it in mitigation of the alleged wrong, and if, in their opinion, the provocation was sufficient, they could find for the defendant. The statute making the insulting words actionable was enacted to supply a need which the legislature of Virginia felt to. exist in the common law, and was designed to afford redress by a civil action for damages to a person maliciously insulted by another who has used language concerning him, whether spoken or written, which is commonly construed as an insult and tends to produce violence of temper and cause

a breach of the peace, but which, at the common law, did not amount to slander or libel. Men were often provoked by insulting words to commit acts of violence which often resulted in homicide. Duelling had become too common a practice in the state, and the statute was at least partially designed to suppress the practice by supplying a civil remedy to the party thus insulted and injured. But it was clearly the legislative purpose to allow the jury, in every such case, to be the sole judges of whether or not damages are recoverable. The effect to be given to words, ordinarily insulting, is a question for the jury. They have the right to give to the same words a different effect, depending on the nature of the circumstances and the occasion of their use, and the mental attitude of the parties toward each other. Hence it was important to show all the facts and circumstances relating to the use of the alleged insulting words. If the jury should conclude that there was not sufficient provocation to justify such a vile epithet, they could regard it as an aggravating circumstance. If defendant's provocation was great plaintiff would not be entitled to as much damage as if the provocation were only slight or entirely wanting.

Exceptions were taken to the refusal of the court to permit certain questions propounded to the witnesses to be answered. But the record does not show how the witnesses would have answered the questions, and, therefore, this court can not presume defendant was prejudiced. *Washington Luna Park Co.* v. *Goodrich,* 110 Va. 692; *Lord & McCracken* v. *Henderson,* 65 W. Va. 321; *Sayre* v. *Woodyard,* 66 W. Va. 228; and *Walker* v. *Strosnider,* 67 W. Va. 39.

The giving of three instructions for plaintiff is also assigned as error. No. 1 is as follows:

"The jury are instructed that if the words referred to in the evidence, when used, you believe they are, from their usual construction and common acceptation, construed as insults and tend to violence and breach of the peace, then they are actionable in themselves and the law presumes that a party uttering them intended maliciously to injure the person concerning whom they are spoken of, unless the con-

trary appears from the circumstances occasioned by the manner of the speaking of the words.''

The objections urged are: (1) it assumes that the words complained of were in fact spoken, whereas there is a conflict in the evidence as to whether or not they were spoken; (2) it tells the jury that when insulting words are uttered the law presumes intention to maliciously injure the person of whom they are spoken; (3) it limits the rebuttal of the presumption to the *manner* of speaking the words; and (4) because it is based upon the dual theory of statutory insult and common law defamation of character, whereas there is but one count in the declaration. Although not artistically drawn, we scarcely think the instruction is faulty in any particular named. Properly interpreted, we think, it tells the jury, that if they believe the words referred to in the evidence, from their usual construction and common accceptation, are construed as insults and tend to violence and a breach of the peace, then they are actionable words, and any person using them is presumed to have intended maliciously to injure the person concerning whom they are spoken, unless the contrary appears from the manner of speaking them and the circumstances which occasioned their use. The qualifying clause, beginning with the word *unless*, is somewhat awkwardly expressed, still we hardly think the jury could have failed to understand that they were instructed to consider both the manner, (i. e. the temper), in which the words were spoken and the circumstances relating to their use; that is, whether the words were spoken in anger and with a purpose to insult, and also whether there was any provocation for using such offensive language. As to the first objection, even if it could be said the instruction assumes that the words were actually spoken, it would not be prejudicial, because defendant admits that he, at the time and place averred, did say ''dirty son-of-a-bitches, robbed me of my money,'' but says he was not angry. Later on he explains why he used the words, and says he did so because ''they'', (meaning plaintiff and his brother,) ''had gotten his money,'' that ''it was nothing but a hold-up proposition,'' (meaning they had won money from him at a game of cards by means of a marked deck). The

second point of criticism is not well taken. Malice may be presumed, by the jury of course, from the use of words which the statute makes actionable. In other words, proof that actionable words were actually spoken makes a prima facie case against the party using them. This is a presumption which may be rebutted by proof that no malice was intended. True it is a presumption of fact, but nevertheless a fact which the law allows the jury to infer from the use of actionable words. We hardly think the qualifying clause of the instruction limits the jury to a consideration only of the *manner* in which the words were spoken. It authorized them to consider the extenuating circumstances, if they believed any had been shown. Neither do we think the instruction liable to the fourth objection made to it. It relates entirely to statutory insult and can not be said to include common law defamation of character. However, on a re-trial of the case, it ought to be redrawn, and so worded as to set forth more clearly the purpose which the draughtsman evidently had in mind.

Instructions Nos. 2 and 4 are as follows:

"No. 2. The court instructs the jury that damages recovered in actions of this character, are of two classes. First, actual or compensatory damages, which embrace loss of reputation, shame, mortification and injury to the feelings. Second, exemplary or punitive damages, which are damages that may be awarded by the jury where they believe that the slanderous or insulting words, if they believe such slanderous and insulting words were used and spoken by the defendant of and concerning the plaintiff are falsely, maliciously, willfully and deliberately spoken of and concerning the plaintiff by the defendant."

This instruction was designed to tell the jury the character of damages recoverable in this kind of action, and is without fault.

"No. 4. The court instructs the jury that if they believe from the evidence in this case that the defendant uttered and published of and concerning the plaintiff, the words referred to in the evidence, and that said words so uttered and published of and concerning the plaintiff by the defendant were, from their usual construction and common acceptation con-

strued as insults and tend to violence and breach of the peace, they shall find for the plaintiff, and if they believe further, that such words were used and spoken by the defendant of and concerning the plaintiff, with a willful, deliberate and malicious intent to injure and insult the said plaintiff, then you shall find for the plaintiff such sum as will compensate him for loss of reputation, if any, shame, mortification and injury to his feelings, if any, and in addition to this, may find punitive damages as a punishment to the defendant.''

This instruction is erroneous for the reason that it is imperative upon the jury to find for the plaintiff, if they find the actionable words were actually spoken, and denies them the discretion which it was the evident purpose of the statute to vest in them. The finding of the jury in actions for statutory insult can not be controlled by the court. But that part of the instruction relating to punitive damages is not erroneous. It leaves it to the discretion of the jury whether or not they will find such damages. In all actions of tort, where the wrong is maliciously, wantonly and wilfully committed, the jury have the discretion to assess punitive, exemplary or vindictive damages,—these terms being synonymous. They have the right to do so in this action. *Mayer* v. *Frobe,* 40 W. Va. 246; and *Turk* v. *Railway Co.,* 75 W. Va. 623, 84 S. E. 569.

The judgment is reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, verdict set aside. Remanded for new trial.*

MASON, JUDGE, *(dissenting):*

I concur in the opinion of the majority of the court that the judgment of the circuit court should be reversed, but I can not concur in so far as it approves plaintiff's instruction No. 2, which embraces ''loss of reputation'' as an element of damage which may be recovered in an action founded on the statute for insulting words. As we differ on a question of law, I express my opinion with great hesitancy.

The laws of all civilized nations from time immemorial have guarded with jealous care the reputation of the individual. ''A good name is rather to be chosen than great riches.'' Proverbs of Solomon. ''The right of personal security con-

sists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation.'' ''The security of his good name or reputation from the arts of detraction and slander, are rights to which every man is entitled, by reason and natural justice; since without these it is·impossible to have the perfect enjoyment of any other advantage or right.'' Blackstone.

The laws of this state make ample provision for the security of reputation and protection against insults. For invasion of these rights, remedies are provided by (1) slander, (2) libel, (3) insulting words whether actionable at common law or not.

1. For libel, the common-law rule is in force, modified only by our Constitution, that: ''In prosecutions and civil suits for libel, the truth may be given in evidence; and if it shall appear to the jury, that the matter charged as libelous, is true, and was published with good motives, and for justifiable ends, the verdict shall be for the defendant.'' Art. III, Sec. 8. This is a modified form of the common-law defense, where it is desired to plead the truth of the libelous words. Under the provisions of the Constitution, to justify such publications, the words must not only be true but must have been published ''with good motives, and for justifiable ends.''

2. Actions lie for defamation at common law as follows: '' (1.) Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2.) Words falsely spoken of a person which impute that the party is infected with some contagious disease, where, if the charge is true, it would exclude the party from society; or (3.) Defamatory words falsely spoken of a person, which impute to the party unfittedness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment. (4) Defamatory words falsely spoken of a party which prejudices such party in his or her profession or trade. (5.) Defamatory words falsely spoken of a person, which though not in themselves actionable, occasion the party special damage.'' *Pollard* v. *Lyon*, 91 U. ·S. 225.

It will be observed that defamatory words to be actionable, in this form of action, must be *per se* such, except those coming under the 5th class. Where the words are intrinsically actionable, the inference or presumption of law is that the false speaking occasioned loss to the plaintiff, and their actionable quality is a question of law for the court, but no such presumption arises if the words are not themselves actionable. No action is maintainable at common law for slander where the words themselves are not actionable, without an allegation in the pleadings and proof of special damages.

One can imagine many vituperating and insulting epithets which one person may use toward another, not slanderous *per se* at common law nor causing any special damages, and yet such as the law should protect a peaceable citizen against. It is a rule of the common law that there is no wrong without a remedy. Our laws should be so comprehensive that this would be a fact as well as an abstract rule of law. This defect of the common law is remedied by the act of the General Assembly of Virginia of January 26, 1810, which declares: "That all words which, from their usual construction and common acceptation, are considered as insults, and lead to violence and breach of the peace, shall hereafter be actionable, and no plea, exception or demurrer shall be sustained in any court within this Commonwealth, to preclude a jury from passing thereon, who are hereby declared to be the sole judges of the damages sustained: Provided, that nothing herein contained shall be construed to deprive the several courts of this Commonwealth from granting new trials as heretofore." Revised Code of Virginia (1819), Chapter 157, section 8.

This section has been amended from time to time in Virginia and in this state, and now is: "All words which, from their usual construction and common acceptation are construed as insults, and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." Section 2, chapter 103 of the Code. This section is further modified by section 47, chapter 130 of the Code, as follows: "In an action for defamation, the defendant may justify by alleging and proving that the words spoken or written were true, and after no-

tice in writing of his intention to do so (given to the plaintiff at the time of, or for, pleading to such action) may give in evidence in mitigation of damages, that he made or offered an apology to the plaintiff for such defamation before the commencement of the action, or as soon thereafter as he had an opportunity of doing so, in case action shall have been commenced before there was an opportunity of making or offering such apology.'' This section was first enacted by the Code of Virginia, of 1849. It applied to actions for insulting words under the statute as well as to common-law slander. *Hogan* v. *Wilmoth,* 16 Grat. 86.

The reason for the adoption at the time of the statute making actionable insulting words, is familiar to all persons acquainted with the legislative history of Virginia in the early part of the nineteenth century. The preamble of the statute states its object: ''Whereas, experience has evinced, that the existing remedy for the suppression of the barbarous custom of dueling is inadequate to the purpose; and the progress and consequences of the evil have become so destructive as to require an effort on the part of the legislature, to arrest a vice, the result of ignorance and barbarism, justified neither by the precepts of morality, nor by the dictates of reason.'' The collision occuring only a short time before in which a distinguished general of the Revolutionary army, ex-member of President Washington's cabinet and a statesman of wide reputation, had been killed by a person who was vice-president of the United States at the time, created a public sentiment among the people of Virginia for the suppression of this ''barbarous custom.'' In *Moseley* v. *Moss,* 6 Grat., at pages 539-40, Judge Baldwin, writing forty years after the passage of this act, delivering the opinion of the court, said: ''Duelling received no indulgence from the common law whatever, which treated its conventions and chivalry as solemn mockeries, and its violence and bloodshed as the result of deliberate malice. But these denunciations were resisted by long cherished prejudices of society, which appealed with dreadful success to some of the strongest principles of human conduct, the pride of character, the fear of humiliation, and the love of distinction. At length, a humane cunning of leg-

islation, resorted to the source of the mischief, and invoking the same principles of action, sought to direct the very cause of the evil to the extirpation of its effect. The statute to suppress duelling was passed, which leaving unmitigated the rigours of the common law, enacted provisions unusual to our criminal jurisprudence, and warranted only by the peculiar exegencies of the subject. By this law its culprits are barred from the halls of legislation, the seats of justice, the executive magistry, all offices of honor and emolument; and the disfranchisement is accomplished, without the aid of prosecution, by the self-imposed sentence of the offender, exacted by the unavoidable alternative of incurring the guilt and shame of perjury.

"The heavy disfranchisement, the inquisitorial and test oathes, and other extraordinary provisions of the statute, are accompanied by the section above quoted, extending the redress for defamatory words to provocations of that nature not before actionable; the Legislature thus seeking, as far as practicable by pecuniary reparation, to remove a supposed apology for duelling. But in thus leaving the ancient landmarks of slander, and adventuring into unexplored regions of defamation and contumely, the injuries by derogatory words contemplated, could not in the nature of things be treated as questions of law."

This statute (of Jan. 26, 1810) had a most salutory effect. The severity of the punishment doubtless had much to do with the repression of the practice engaged in as one of "honor", falsely so-called. Judge Allen's comment on this statute in delivering the opinion of the court in *Brooks* v. *Calloway*, 12 Leigh, at page 471, is full of wisdom: "The effect of the statute has been most beneficial; the practice has been repressed. It exists almost a solitary example of legislation carried to the extremity of rigour, where the severity of the enactment has not defeated the policy of the law."

Having accomplished its purposes, this statute has disappeared as a separate chapter, but most of its provisions have been kept alive and distributed in appropriate chapters of the Code, and incorporated in part, in the Constitution of the state.

Then, keeping in mind the remedies afforded by the law for defamation and injuries sustained by loss of reputation prior to the act of January 26, 1910, and the defects in the law intended to be corrected by that statute, we should not have much trouble in ascertaining its meaning. In the first place it is plain that it was not intended to give any additional protection to personal security against injuries sustained by defamatory words, or words which occasion special damages. The law at the time was deemed ample for these purposes. But as we have seen, the common law does not provide a remedy for all derogatory and insulting words. To make such words actionable at the common law, they must come within the common-law rules just stated. It was to correct this defect in the common law that the legislature declared that all insulting words which tend to violence and breach of the peace are actionable. This statute does not in the slightest manner interfere with the common-law remedy, either by adding to or taking from it anything. It remains precisely as before this act was passed.

All common-law defamatory words are insults, and some of them are something more. *Moseley* v. *Moss, supra.* A party aggrieved may sue for both common-law slander and insulting words, arising from the use of the same words, if the words justify, but he can not do both in the same count of his declaration. *Chaffin* v. *Lynch,* 83 Va. 106; *Payne* v. *Tancil,* 98 Va. 267. A person aggrieved by a common-law defamation may waive proceedings at common law and elect to treat it as an insult under the statute. *Sweeny* v. *Baker,* 13 W. Va. 210-211. One of the reasons why he can not do both in the same count is that at common law the actionable quality of the words is a question of law and may be passed upon by the court upon demurrer, but the statute prevents the court from saying on demurrer whether the words are insults etc. This is left to the jury. At common law the gravamen of the action is the injury to the reputation, or special damages occasioned by the use of the words. Under the statute the gravamen of the action is for the insult to the feelings of the offended party. *Brooks* v. *Calloway, supra.* "This statute is really for insulting words hurting the feelings, causing anger and violence

and breach of the peace.''. *Poling* v. *Pickens,* 70 W. Va., at page 121. The pleader must determine whether he will sue for damages to the reputation of the aggrieved party or for special damages occasioned by the use of the defamatory words, or whether he will sue for the insult. If he sues for the insult, his proof and recovery will be limited to the allegations of his declaration and his demand for compensation for the insult. If he seeks damages in his pleading for the insult, that establishes his cause of complaint. It is notice to the defendant of what he is charged with, and recovery will be limited to the complaint. A person can not recover damages for injuries to his reputation on the mere allegation that he was insulted. He may have been grossly insulted, and his reputation not injured. It is equally true that if the action is under the common law, he will be limited to recovery for the damages allleged.. ''There are essential points of difference, affecting both the pleading and the evidence, between the action for defamation founded on the common law on the one hand and that founded upon the statute on the other.'' *Moseley* v. *Moss, supra,* page 546. In *Hogan* v. *Wilmoth, supra,* at pages 83-4, it is said: ''That if he proceeded under the statute he should declare under the statute; and that if he did not declare under the statute his declaration,. to be good, should properly charge words amounting to slander at common law; that he could not blend charges for the statutory and the common law grievance in the same count; and that when, therefore, the plaintiff, on the face of his declaration, treated the grievance as a common law defamation, he should be held to his own construction of the words, and required to make out such a case by his pleadings and evidence; and, failing to do so, could not recover for an insult under the statute.'' It is only an application of the elementary principles of common-law pleading to inform the defendant distinctly whether he is being proceeded against for common-law defamation or for insulting words.

There is but one count in the declaration in the case at bar. It is founded on the statute for insulting words. Tested by the rule laid down in *Chaffin* v. *Lynch, supra,* treating the words in the declaration averring plaintiff's good character

and the words concluding that "by reason thereof he has been injured in his good name" etc. as "inducement," the declaration is good as a declaration for insulting words under the statute, but would not be good for common-law slander, and was not intended to be a declaration for common-law slander.

The declaration in *Poling* v. *Pickens, supra,* was objected to, but was held good for the reasons stated in the opinion in *Chaffin* v. *Lynch, supra.* Judge BRANNON, in delivering the opinion of the court in that case, says, at pages 119-120: "If I understand the point made against the declaration it is that it joins common law slander and statutory slander in the same count. I do not consider this mode of framing a declaration as very good pleading or artistic pleading. Statutory slander, if of a character to insult and produce anger and breach of the peace gives action, though it may not impute legal crime or injure fame or reputation, but merely insults, and therefore I would think that the declaration should merely state that the defendant spoke certain words of and concerning the plaintiff maliciously and unlawfully, with an averment that they were such words as from their usual construction and common acceptation are construed as insults and tend to violence and breach of peace. All allegations of the plaintiff's good character and of intent on the part of the defendant to defame it and allegation of injury thereto seem useless and out of place in actions for statutory slander." Further, commenting on *Chaffin* v. *Lynch, supra,* Judge BRANNON says: "There it is said that in an action for statutory slander so much of the declaration as follows the common law form of declaration for slander is mere matter of inducement, and unobjectionable. I would say it is surplusage."

If allegations of this character are "useless and out of place" in declarations for statutory slander and are to be considered simply as "inducements" or "surplusage", certainly they should not be taken as elements of damages upon which a recovery may be had. It would be a perversion of all good pleading to authorize a recovery on an averment which is simply surplusage and improperly introduced into the declaration.

Regarding the declaration as good for insulting words, the recovery must be confined to damages for the insult, and the plaintiff can not recover under the declaration for injuries to his reputation. The circuit court permitted this to be done in instructing the jury that: ''The court instructs the jury that damages recovered in actions of this character, are of two classes. First, actual or compensatory damages, which embraces loss of reputation, shame, mortification and injury to the feelings. Second, exemplary or punative damages, which are damages that may be awarded by the jury where they believe that the slanderous or insulting words, if they believe such slanderous and insulting words were used and spoken by the defendant of and concerning the plaintiff, are falsely, maliciously, willfully and deliberately spoken of and concerning the plaintiff by the defendant.'' By this instruction the jury was told that in making up its verdict to consider the ''loss of reputation'' of the defendant. This is a proper element of damages in common-law slander, but not in actions for insulting words. By this instruction the jury would make up its verdict on both common-law and statutory slander. All agree that under the practice in Virginia and in this state it is error to blend common-law and statutory slander in the same count. It would be far more objectionable to do this by an instruction to the jury. In my opinion, this instruction, in so far as it instructs the jury to consider ''loss of reputation'' of the plaintiff as an element of damages upon which to found the verdict, is fatally defective. The same vice appears in instruction No. 4. This instruction (No. 4) was disapproved by the court, but for another reason.

As we have seen, if the words complained of will bear that construction, the person aggrieved may elect to sue for defamation, or he may sue for the insult, or he may sue for both, in different counts in the declaration, but he can not blend the two in the same count. The pleader can have the benefit of both common-law slander and statutory slander in this way and not otherwise. If he can have the benefit of it by instructions to the jury, he would be permitted to circumvent the well established rules of this court regarding slander and libel. He can not get by instruction of the court what it

would be error to embrace in his declaration as an element of damages in the same count, alleging damages for insulting words. In other words he can not recover damages for "loss of reputation" without having sued for it in legal form. In an action for insulting words, the suit is not for "loss of reputation", as I understand the law.