# CHARLESTON.

CORA E. FISHER *v.* MAY H. FISHER AND E. S. FISHER.

Submitted September 27, 1921.    Decided October 4, 1921.

1. DAMAGES—*Compensatory Damages Must be Considered in Fixing Amount of Punitive Damages.*

    Punitive or exemplary damages should not be awarded in any case where the amount of compensatory damages is adequate to punish the defendant; and in a case where such compensatory damages are not adequate for the purpose of punishment, only such additional amount should be awarded as taken together with the compensatory damages will be sufficient therefor.   (p. 203).

2. SAME—*Instruction That Jury May Allow Punitive Damages in Addition to Compensatory Damages Held Error.*

    An instruction should not be given which directs the jury that, if they are of opinion to award punitive damages, they may allow the same in addition to the damages to which they find the plaintiff to be entitled to compensation.   (p. 206).

3. LIBEL AND SLANDER—*Jury Should be Instructed to Consider Provocation in Mitigation of Damages.*

    In an action for insulting words it is proper for the jury, in mitigation of damages, to consider the provocation under

89 W. Va.

which the words were uttered produced by conduct on the part of the plaintiff, and an instruction offered to this effect should be given. (p. 206).

Error to Circuit Court, Wood County.

Action by Cora E. Fisher against May H. Fisher and another. Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*F. P. Moats, Reese Blizzard,* and *C. M. Hanna,* for plaintiffs in error.

*Robert B. McDougle, C. N. Matheny,* and *H. D. Matthews,* for defendant in error.

RITZ, PRESIDENT:

In this action to recover damages for insulting words, the jury rendered a verdict in favor of the plaintiff for the sum of one thousand dollars, upon which judgment was rendered, to review which this writ of error is prosecuted.

The plaintiff Cora E. Fisher and the defendant May H. Fisher married brothers. At the time of her marriage the plaintiff was a widow having three children of her own, and her husband was a widower having four children. Since their marriage five children have been born to them. One of the children of the plaintiff by her former marriage and one of the children of her husband by his former marriage were in the military service during the late world war, and both of these boys were killed in action, one in the latter part of October, 1918, and the other on the 8th day of November, 1918. One of the children of the plaintiff by her second husband died of asthma in May, 1917, and another of their children was burned to death in the month of May, 1920, at the home of a neighbor. This latter child was of very tender years, and his clothes seem to have become ignited while playing with matches with the children of a neighbor family at their home. These facts are stated as it is insisted they have a material bearing upon the case, and made the words used of a peculiarly aggravating nature.

The occurrence giving rise to this litigation happened on the 18th day of June, 1920. According to the contention

of the plaintiff, on that day Mrs. Homer Wenmouth came to her house for the purpose of receiving some strawberries which she had theretofore purchased. The plaintiff says that she went with Mrs. Wenmouth to the back of the house to get the strawberries, and after delivering them Mrs. Wenmouth started to return to the street by the way she had come, when plaintiff remarked to her that she might walk across the lawn, a nearer way, to which her visitor replied that some people would not like others to walk on their grass, to which the plaintiff replied that she did not care, but it would be different if it was on the next lawn, the next lawn belonging to the residence of the defendants. The defendant, May Fisher, seems to have taken offense at this time, and addressed to the plaintiff some excited remarks which the plaintiff did not understand, and upon inquiring of the said May Fisher to whom she was speaking, and being informed that she was talking to plaintiff, plaintiff asked her to come closer so that what she said could be heard; that the parties thereupon approached each other, and when they came close together the defendant, May Fisher, said to the plaintiff in an angry and excited tone, "You let your children die like dogs. Yes, indeed, Madam, every one of them. If you would stay in the house and not stand around out on the lawn and point me out in overalls, your children wouldn't die like dogs." This language was resented by the plaintiff, and after some criminations and recriminations the parties separated. The plaintiff's contention in regard to the language used by Mrs. May Fisher is borne out by Mrs. Wenmouth who was present, and by Lulu Wagoner and James Shepherd. The defendant admits the altercation, but denies that she used the language attributed to her by the plaintiff. She says that all she said was that the plaintiff neglected her children, and asserted on the witness stand that she sticks to that statement, and she contends that this statement was occasioned by the plaintiff pointing to her while she was in her back yard clad in overalls. As before stated, the jury's verdict was in favor of the plaintiff.

The defendants contend that the court erred in giving to the jury certain instructions on motion of the plaintiff, in re-

fusing to give instruction No. 2 offered by the defendants, and that the damages awarded are excessive.

The defendants insist that the court erred in giving to the jury plaintiff's instructions Nos. 2, 3, 4 and 6. Instruction No. 2 says that there is nothing in the antidueling law, or any other law, that would prevent the plaintiff from recovering because the defendant who used the alleged insulting words is a woman. It is not claimed that this instruction is vicious as a proposition of law, but that it was without application to the case. It occurs to us that this criticism is without merit. The defendant who used the alleged insulting words in this case is a woman, and it was entirely proper for the court to tell the jury that the statute under which the suit was brought was applicable to women as well as to men.

Defendants claim that instructions 3 and 4 are inconsistent and contradictory. Instruction No. 3 is to the effect that if the jury believed the words used, from their usual construction and common acceptation, to be insulting, and to tend to violence and a breach of the peace, they were actionable words, unless it appeared from the manner of speaking them, and the circumstances which occasioned their use, that they were used in a different sense; and instruction No. 4 tells the jury that in determining whether or not the language complained of is insulting the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them. The conflict in these two instructions, according to the contention of the defendants, is that in the latter the jury is told that in construing the words they must give them their ordinary and popular meaning, while in the former they are told that they must give them this meaning, unless it appears that they were used in a different sense. This conflict is more apparent than real, however, when we apply these instructions to the facts in this case. Instruction No. 3 was taken from the case of *Michaelson* v. *Turk*, 79 W. Va. 31, in which the defendant attempted to show that, while the words in their ordinary sense were very insulting, they were used at the time in a figurative sense, which was understood by all of the parties present. In this case, there is no attempt to show that the language used was

intended to convey any different meaning from what the words would import, so that the qualification of instruction No. 3 in regard to construing them in another sense in case the jury found that they were used in a different sense from what they would ordinarily be understood, was unnecessary, and should not have been given in this case.    However, this qualification of the instruction was entirely harmless inasmuch as there was no evidence before the jury to which it could be applied.    These instructions, as applied to the facts in this case, mean exactly the same thing, and there was, of course, no necessity for giving more than one of them.

One of the principal contentions of the defendants is that the court erred in giving instruction No. 6, which is as follows: ''The court further instructs the jury that, in determining the amount of damages to which the plaintiff may be entitled, if they believe she is entitled to recover under all the instructions, they shall take into consideration all the facts and circumstances of the case as disclosed by the evidence, the nature and character of the charges, the language in which they are expressed and its tendency, the occasion on which they were published, the extent of their circulation and probable effect upon those to whose attention they came, and their natural and probable effect upon the plaintiff's personal feelings, and her standing in the community in which she lives; and, if under the other instructions herein she is entitled to recover, they should award her such sum by way of damages as will fairly and adequately compensate her: (a) For the insult to her; including any pain and mortification and mental suffering inflicted upon her; and (b) For any injury to her reputation as a woman and citizen.    And if the jury believe, from all the evidence in this case, that the acts complained of were influenced by actual malice and a wilful design to injure or oppress the plaintiff, she may recover in this action, in addition to such damages as those mentioned above, punitive or exemplary damages; that is to say; that the jury will not be limited in the amount of its verdict, for the plaintiff, to compensation to her for the actual damages sustained as above    indicated.    They may give her such further damages as they may think right, in view of all the

circumstances of the case, as a punishment for the defendant, and as a salutary example to others to deter them from offending in a like manner, but said damages are not to exceed $25,000.'' It is insisted that this instruction violates the rule well established by this court for awarding punitive damages as announced in the cases of *Claiborne* v. *Ry. Co.*, 46 W. Va. 363; *Allen* v. *Lopinsky*, 81 W. Va. 13; *Hess* v. *Marinari*, 81 W. Va. 500; *Pendleton* v. *Ry. Co.*, 82 W. Va. 270; and *Goodman* v. *Klein*, 87 W. Va. 300, 104 S..E. 726, in this, that it directs the jury that they may allow such punitive damages in addition to the compensatory damages. The doctrine announced in the above cases, that punitive damages can only be awarded to a plaintiff when the compensatory damages are not sufficient for the purpose of punishment, and this only to the extent that taken together with the compensatory damages the purpose of punishment will be met, is not questioned, but it is insisted by the plaintiff that this instruction is not susceptible of the interpretation placed upon it by the defendants, and the case of *Turk* v. *Ry. Co.*, 75 W. Va. 623, is relied upon to justify it. It will be observed from an examination of the instruction given in this case that it does tell the jury that the punitive damages allowed, if they are of opinion to allow any, are to be in addition to the compensatory damages; and, again, in the instruction they are told that they may give such punitive damages as further damages, clearly to our mind conveying the impression to the jury that in case they were of opinion to give punitive damages, the same would be in addition to the compensatory damages to which they might find the plaintiff entitled. The instruction given and approved in the case of *Turk* v. *Ry Co.*, *supra*, did not use this language. The giving of punitive damages, as we have repeatedly held, is a matter purely discretionary with the jury. Even though the case may be one loudly calling for punishment, the jury may deny punitive or exemplary damages. As we have said in other cases, all damages are punitive so far as the defendant is concerned. He gets nothing of substance in exchange for the recovery against him, and when the jury are awarding damages for the purpose of punishment it must be borne in mind that the plain-

tiff is receiving something to which he is not entitled.    This is the basis of the rule established in this jurisdiction that no more damages in the aggregate can be awarded in a case like this than will be sufficient to accomplish the purpose of punishment, when the compensatory damages are found to be insufficient for that purpose.    An instruction should not be given which in effect tells the jury that if they find damages by way of punishment *they* may add the same to the amount found by them as compensatory damages, and return a verdict for the aggregate amount.    This would be punishing the defendant twice for the same thing.    We are of opinion that this instruction is amenable to the criticism made against it by the defendants, and that the court erred in giving the same.

Instruction No. 2 offered by the defendants and refused is:

''If the jury believes from the evidence that the words complained of were the result of passion and were used while the parties were engaged in a heated altercation, or quarrel; and if they further believe that in this quarrel May H. Fisher was provoked to use the words complained of by insulting language addressed to her by the plaintiff Cora E. Fisher; then these facts shall be taken into consideration by you in arriving at your verdict.''    It will be observed that this instruction directed the jury to take into consideration any provocation the defendant May Fisher may have had when she used the words complained of because of offensive language used to her by the plaintiff.    It is not contended that this is not a correct proposition of law.    There is no doubt but that in determining the amount of damages to which a plaintiff is entitled in a suit like this the jury may consider the provocation under which the defendant used the words resulting from offensive language used by the plaintiff. *Alderson* v. *Kahle*, 73 W. Va. 690.    It is said, however, that this instruction is covered by instruction No. 1 given on behalf of the defendants, and in a measure this is true, but instruction No. 1 was given upon the theory of justification of the defendants, and not upon the theory of mitigation, while instruction No. 2 is based upon the idea that these things may be considered to mitigate the damages.    In this view both instruc-

tions should have been given. The jury did not consider the facts proven by the defendant as sufficient for justification, but if this instruction No. 2 had been given they might have considerably mitigated the damages because of the plaintiff's conduct.

It results from what we have said that the judgment will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded*